*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ARTIS LEE HOLMES,

      Defendant-Appellant.

UNPUBLISHED
December 18, 2025
12:36 PM

No. 374844
Jackson Circuit Court
LC No. 2019-002923-FC

Before: SWARTZLE, P.J., and O'BRIEN and BAZZI, JJ.

PER CURIAM.

This case returns to us after remand to the trial court. Defendant was charged and convicted of assault with intent to commit great bodily harm after a fight between him and the victim, a member of his girlfriend's family, resulted in the victim being stabbed. Defendant appealed his conviction and his 28-month upward-departure sentence of 15 to 40 years, and this Court remanded to the trial court to "further articulate its reasoning for its upward-departure sentence or to resentence defendant." *People v Holmes*, unpublished per curiam opinion of the Court of Appeals, issued February 22, 2024 (Docket No. 362221), p 1. Defendant is now appealing the trial court's resentencing of 152 to 360 months' imprisonment. We affirm.

## I. BACKGROUND

The facts of the underlying crime were set forth in this Court's previous opinion:

This case arises from a fight between defendant and Donald Cain [the victim] during which Cain was repeatedly stabbed.

For years, Cain had been in a dating relationship with the mother of Brianna Sweet, and she viewed him as her stepfather and as a quasi-grandfather to her children. Sweet lived with defendant, their children, and her aunt. Sweet had two children with defendant, and on August 7, 2019, Cain had plans to take one of the children to the county fair. Unbeknownst to Cain, defendant had been feuding with Cain's brother, Ernest Eison, and Eison had sent threatening text messages to defendant. When Cain arrived to pick up the child for the county fair, Sweet told him that she

-1-

did not want Cain to take the child. When defendant arrived and confirmed what Sweet said, Cain was outraged and a heated argument with defendant ensued. The pair argued in the driveway, and as defendant went into the breezeway of his house, Cain followed him and attacked him with his fists. Cain started the fight, but defendant finished it.

Defendant stabbed Cain in his arm, chest, neck, and thorax area. Cain suffered some of the stab wounds to his back as he was trying to leave the breezeway. Once outside the breezeway, Cain passed out, and while he was on the ground, defendant stomped on his face, causing Cain to suffer a broken nose and a broken eye socket. Cain was able to get into his car and drove to his brother's house, and an ambulance then took him to the hospital. Defendant was arrested the same day; he was charged with assault to commit murder. [*Holmes*, unpub op at 1-2.]

During trial, the jail deputy who searched defendant when he was booked after his arrest testified that he "observe[d] a red splatter on [defendant's] shoes," which "appeared to be blood." Later, when retrieving defendant from a holding cell, the deputy noticed that defendant's "shoes were completely white" and no longer had a red splatter on them. Finding this suspicious, the deputy reviewed the surveillance video from the holding cell and testified that it appeared that defendant "put some toilet paper in the sink to get water" and rubbed his shoes.

Further, one of the investigating officers testified that he listened to a jail phone call between defendant and Sweet in which defendant "indicate[d] he's surprised . . . that a weapon was not recovered" and that he would be sending a letter to her. The officer then screened letters sent to Sweet, and in one of the letters, defendant "mentioned needing [Sweet] to get some money and shit off of the roof." Upon investigation, the officer located a pair of silver steel scissors wrapped in clear plastic Saran Wrap. Although there was a dark substance on the scissors that the officer suspected could be blood, lab testing found that there was not an indication of blood on the scissors. The officer suspected that the scissors were cleaned before being wrapped in Saran Wrap because he saw the wrap inside the home next to rubbing alcohol and a towel.

Although charged with assault to commit murder, the jury found defendant guilty of the lesser crime of assault with intent to do great bodily harm less than murder, MCL 750.84. The trial court sentenced him to a 28-month upward-departure sentence of 15 to 40 years. Defendant appealed, arguing errors with the jury instructions, his right to testify, prosecutorial conduct, and sentencing, specifically that the trial court did not properly justify its 28-month upward-departure sentence. Defendant's convictions were affirmed, but this Court remanded the case back to the trial court for either an explanation for the departure from the sentencing guidelines or for resentencing. On remand, the trial court resentenced defendant to serve 152 to 360 months' imprisonment based on a minimum sentencing guidelines range of 38 to 152 months. Defendant now appeals his resentencing.

## II. ANALYSIS

In this appeal, defendant is arguing that the trial court erred in its scoring of Offense Variables (OV) 7 and 19. We review for clear error the trial court's factual determinations when calculating the guidelines and review de novo statutory interpretation of scoring conditions.

*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Trial courts are to determine sentencing variables "by reference to the record, using the standard of preponderance of the evidence." *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008).

Defendant first argues that the trial court improperly assessed 50 points for OV 7 because his conduct was a mutual fight with an initial aggressor rather than heinous or extreme conduct. OV 7 considers whether there was aggravated physical abuse involved in the sentencing offense and is assessed at 50 points if a victim "was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). When assessing OV 7, the trial courts "must consider whether the defendant engaged in conduct beyond the minimum required to commit the offense and, if so, whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount." *People v Rodriguez*, 327 Mich App 573, 579; 935 NW2d 51 (2019) (cleaned up). A defendant's use of excessive violence, taunts, threats, or a weapon not required to commit the underlying offense can all be considered when assigning points to OV 7. *People v Lydic*, 335 Mich App 486, 497-499; 967 NW2d 847 (2021).

Defendant's sentencing offense, assault with intent to commit great bodily harm, does not require the use of a weapon. MCL 750.84(1)(a). Defendant repeatedly stabbed the victim in the stomach with a sharp object and continued to kick the victim while on the ground and retreating from defendant, resulting in victim's broken eye socket and broken nose. Defendant's continued attack in conjunction with defendant's use of a weapon to stab the victim supports by a preponderance of the evidence the trial court's finding that defendant's conduct was excessive and intended to increase the victim's fear or anxiety. See *Rodriguez*, 327 Mich App at 580. Therefore, the trial court did not err by assigning 50 points to OV 7.

Defendant next argues that the trial court erred in assessing 10 points for OV 19 because he did not interfere with the administration of justice. Specifically, defendant argues that the scissors found on the roof were not the weapon used to stab the victim, and thus their presence on the roof cannot support assigning 10 points to OV 19. The trial court must assign 10 points under OV 19 if the "offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). The plain and ordinary meaning of interference for assessing points for OV 19 "is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). Generally, "conduct that occurred after an offense was completed may be considered" when assessing points for OV 19. *People v Smith*, 488 Mich 193, 202; 793 NW2d 666 (2010).

Although defendant argues that the wrapped scissors on the roof were not the object used to stab the victim, the trial court could infer defendant's interference or attempted interference with the investigation based on the evidence. The scissors wrapped in plastic wrap were located by police after defendant sent his girlfriend a letter from jail directing her to remove something from a particular area of the roof. Although no fingerprints, blood, or DNA evidence was found on the scissors, police suspected that the scissors were cleaned after they found plastic wrap inside the home near a bottle of rubbing alcohol and a towel. From this evidence, and considering that defendant provides no alternative explanation as to why he sent the letter from the jail or why scissors wrapped in plastic were found on the roof, the trial court could reasonably infer that

defendant intended to interfere with the investigation by hiding the scissors that he used to stab the victim and instructing his girlfriend to remove the scissors from that hiding spot. See *Hershey*, 303 Mich App at 343. Similarly, despite defendant's claim that his shoes were not part of the investigation, it was reasonable for the trial court to infer from the evidence that defendant acted to evade the administration of justice when he removed blood from his shoes. See *Smith*, 488 Mich at 202. Therefore, the trial court did not clearly err when assessing 10 points for OV 19.

### III. CONCLUSION

The trial court did not clearly err in its resentencing of defendant. OV 7 was properly assessed at 50 points for excessive brutality when defendant used a weapon when the offense did not require it, and defendant's continued attack on the victim resulted in the victim's serious injuries. Further, the trial court did not err by finding by a preponderance of the evidence that defendant intended to interfere with the administration of justice.

Affirmed.

/s/ Brock A. Swartzle
/s/ Colleen A. O'Brien
/s/ Mariam S. Bazzi